# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CHRISTOPHER ERICKSON,** | **Case No.** 5:17−cv−10045−JCO−APP |
| **Plaintiff,** | |
| **v.** | **Hon. John Corbett O'Meara** |
| **COLLINS ASSET GROUP, LLC and POTESTIVO & ASSOCIATES, PC,** | |
| **Defendants.** | |

## PLAINTIFF'S MOTIONS TO 1) COMPEL DISCOVERY AND UNREDACTED DOCUMENTS, TO CONTINUE OR COMPEL RESPONSES TO 30B6 EXAM QUESTIONS, 2) AMEND PLAINTIFF'S COMPLAINT TO CONFORM TO EVIDENCE 3) PERMIT PLAINTIFF TO FILE RULE 26A(2) EXPERT WITNESS DISCLOSURES AFTER THE SCHEDULING ORDER DEADLINE, AND 4) EXTEND THE SCHEDULING ORDER

Pursuant to Fed. R. Civ. P. 37, and for the reasons set forth in this brief, Plaintiff requests that this Court grant an order compelling Defendants Collins Asset Group LLC ("CAG") and Potestivo and Associates, PC ("Potestivo") to produce unredacted documents and to continue the Defendants' 30(b)(6) depositions or otherwise compel answers to the 30(b)(6) deposition questions objected to by Defendants.

The undersigned Plaintiff's counsel spoke with Defense counsel for CAG and Potestivo regarding the outstanding discovery materials, deposition issues and

sought concurrence with this motion pursuant to local rules 7.1 and 37.1, on October 31 and November 1, 2017 during the Defendants' depositions as well as on November 27 & 28, 2017 and concurrence was denied.

Dated:  November 28, 2017                          Respectfully Submitted,

                                                   */s/ Rex C. Anderson*
                                                   Rex C. Anderson (P47068)
                                                   Counsel for Plaintiff

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTIONS TO 1) COMPEL DISCOVERY AND UNREDACTED DOCUMENTS, TO CONTINUE OR COMPEL RESPONSES TO 30B6 EXAM QUESTIONS, 2) AMEND PLAINTIFF'S COMPLAINT TO CONFORM TO EVIDENCE 3) PERMIT PLAINTIFF TO FILE RULE 26A(2) EXPERT WITNESS DISCLOSURES AFTER THE SCHEDULING ORDER DEADLINE, AND 4) EXTEND THE SCHEDULING ORDER

## INTRODUCTION

Plaintiff CHRISTOPHER ERICKSON ("Erickson"), moves this Honorable Court to overrule Defendants CAG and Potestivo's objections to discovery requests and 30(b)(6) examination questions and to enter an Order pursuant to Fed.R.Civ.P. 37(a) compelling both Defendants to provide complete responses and documents to Plaintiff's discovery requests including Requests for Production of Documents, the responses of which are incomplete and redacted, and Defendants failure or refusal to answer certain examination questions at the 30(b)(6) depositions of both defendants. This motion arises from Defendants' failure or refusal to produce responsive and unredacted documents to Plaintiffs' request for production of documents and requests during the 30b6 examinations of both defendants.

## STATEMENT OF FACTS

This case involves two debt collectors, CAG, a debt buyer, and Potestivo, its collection law firm who sued Mr. Erickson in state court on October 19, 2016 for a deficiency related to his mortgage/note. Erickson's home went into foreclosure some

8 years prior to CAG's collection lawsuit being filed. Erickson defended the state court claim alleging that CAG did not have legal standing and sued beyond the statute of limitations. Erickson then filed his own lawsuit against CAG and Potestivo for violations of the FDCPA and state laws regulating collection practices.

Erickson's federal case alleges that both Defendants, CAG and Potestivo, made false, deceptive or misleading representations in connection with their debt collection activity. Specifically, Defendants both made deceptive representations regarding the character and legal status of the debt and CAG's status as Holder in Due Course. Defendants also provided amortizations schedules which they created and which were inaccurate, misleading, and confusing to the consumer and inapposite to the original creditor's amortization schedule.

This honorable court set its initial discovery deadline for September 29, 2017 and extended it an additional 60 days on September 22. On October 31 Plaintiff took the deposition of CAG, originally scheduled for May 31. CAG's witness appeared for deposition without producing the original promissory note for inspection in violation of plaintiff's subpoena. CAG claims to be a holder in due course based upon this same promissory note, which is in controversy. Potestivo's deposition was taken on November 1 and the plaintiff's deposition took place on November 28. Because of the delay in taking the defendants' depositions and the defendants production of documents so late and close to the discovery deadline, the plaintiff

was unable to ascertain many material facts related to his case until just the last few weeks. For example, Plaintiff just received important documents (albeit redacted) relating to CAG's ownership of the debt at issue to wit: the Newport Beach Holding LLC (Newport) - Unsecured Debt Sale agreement produced on 10/27/17. See Exhibit A. The assignment documents and the schedule of assets / delinquent accounts which CAG acquired from Newport produced 10/27/17. See Exhibit A. CAG's collection / correspondence activity log produced 10/30/17. See Exhibit B. Potestivo produced its CaseAware collection activity report on 11/15/17 (two weeks after its deposition). See Exhibit C.  80% of the CaseAware report was redacted, rendering it completely useless in determining any whether acts or omissions on the part of Potestivo could be construed as violating the FDCPA and the Michigan Regulation of Collection Practices Act (MRCPA). Potestivo produced its responses to production of documents on 10/25/17. Both Defendants' training materials and FDCPA compliance materials were produced on 10/27/17. CAG's responses were 93 days late and Potestivo's responses were 74 days late. When CAG and Potestivo finally did respond, and produce discovery it was replete with objections and redactions which necessitates this motion to compel.

Based upon what Plaintiff recently gleaned in discovery and the two depositions on October 31 and November 1, it is necessary to seek leave at this late date to amend his complaint to conform to the additional evidence procured during

the defendants' depositions and late production of documents. Unfortunately, the plaintiff has not had available time to draft an amended complaint as of this date and to attach as an exhibit to this motion and requests 14 days to prepare and submit.

The plaintiff has acted diligently to obtain discovery and gave defendants several extensions on professional courtesy and relied on defendants' promises that the discovery would be forthcoming but that discovery was provided only just before the two defendants' depositions.

At this same time, it is also necessary for Plaintiff to seek leave to designate a handwriting expert based upon the discovery materials which defendants produced within the last few weeks. These recently produced documents raise serious concerns over the signatures being either forged or robo signed on the promissory note upon which CAG asserts its status as a Holder in Due Course.  The issue of "Holder in Due Course" status is a central issue to the both the state and federal actions as it goes to the character and legal status of the debt being collected.

## BACKGROUND INFORMATION

Defendant, Christopher J. Erickson, refinanced his mortgage on the property located at 2497 Bird Road, Ortonville, Michigan 48462, on or about December 26, 2006.  To refinance that mortgage, the mortgage broker arranged financing known as an "80/20," a first mortgage loan covering approximately 80% of the purchase price and then a second mortgage loan covering approximately 20% of the purchase

price.  Both loans were originated by Quicken Loan Inc. and were secured by the same real property.

Thereafter, the 80% loan of $192,000 was assigned to Indy Mac and the 20% loan, $35,700 was assigned to GMAC.  Defendant began making payments on both mortgage loans to Indy Mac and to GMAC.  Unfortunately, there came a time when plaintiff's finances changed due to loss of employment and he was unable to make the payments.  In 2008 Defendant defaulted on both mortgages.  Indy Mac eventually foreclosed on Erickson's home after many adjournments of sheriff's sale commencing in February 2009 and ending on or about November 10, 2009. The sale price of $211,400.00 provided a surplus of approximately $13,000.00 which should have been applied to the balance on the GMAC mortgage but apparently was not.

The Defendants, CAG and Potestivo, filed their state court collection lawsuit based entirely upon documents provided to CAG from another debt buyer, Newport Beach Holdings LLC (Newport). Newport was alleged fifth assignee/owner of Erickson's account since 2008, making CAG the 6th owner/assignee. (Ex E - CAG TR 108:14.) According to the bill of sale, CAG purchased the "Erickson" account along with 1048 other similar non-performing accounts. Ex A. The documentation and testimony produced during discovery by defendant CAG and Potestivo in both state and federal cases does not satisfy either Michigan law regarding negotiable instruments, assignments and/or sales of financial assets or the UCC. In short, CAG

cannot show a complete chain of title to support its legal standing to sue Erickson and so has proffered the false, misleading and deceptive communication that it is a Holder in Due Course (HIDC). CAG does not have an unbroken chain of title of the preceding assignments and / or sale documents and schedules from the original creditor to itself.  CAG has attempted to circumvent Michigan state substantive law governing the assignments of financial obligations by suing Erickson and approximately 85 other consumers similarly situated to Erickson in CAG lawsuits, under a negotiable instrument theory alleging that it is a Holder in Due Course.  In so proceeding CAG attempts to circumvent the requirements of proving a full and complete chain of title, legal ownership and standing to sue. Michigan assignment law requires proof of legitimate transfers by persons authorized to sell and assign, with notarization of signatures and dates of said transactions.  See *Brown Bark, II LP v Bay Area Floorcovering & Design,* 2011 Mich App LEXIS 1003, (May 31, 2011).  *Palisades Collection, LLC v Taylor, Hudson & Keyse, LLC v Gregory*, Consolidated Nos 08-684-CZ, 08-1012-CK-3 Saginaw County Circuit Court (2008).

CAG is a Texas LLC formed in 2011 to "acquire distressed assets … collect delinquent accounts." Ex E - CAG TR. 48:25. CAG's acquisitions involve purchasing thousands or tens of thousands of delinquent defaulted accounts at a time. Ex E CAG TR. 109:3,8. In this case, CAG bought Erickson's debt as part 1048 account portfolio from another debt buyer, Newport Beach Holdings LLC.

The Newport portfolio of 1048 delinquent accounts all involved notes originating out of foreclosed second mortgages. (Ex F - Potestivo TR 48:20). Potestivo with the aid of CAG designed a template complaint designed specifically for suing on CAG's Newport portfolio.  (Ex F - Potestivo TR 47:15).

## <u>DISCOVERY REQUESTS AND ARGUMENTS</u>

**The Court Should Compel Defendants to Produce Documents Responsive to Plaintiff's Requests for Production of Documents.**

Erickson brings this motion to overrule objections and to compel Defendants' Collins Asset Group LLC (CAG) and Potestivo and Associates (Potestivo) to produce unredacted documents.  More specifically, Plaintiff  requests the court to enter an order:

<u>Requiring CAG to produce or provide</u>:

1) The unredacted original wet signature promissory note for inspection, a copy of which CAG attached to its state court collection action against Erickson.

2)  An unredacted copy of the sale and purchase agreement between Newport Beach Holding LLC (Newport) and CAG which does not redact the purchase price and face value of the portfolio assigned. See **Exhibit A** (BS 000143-152).

3) An unredacted copy of the Bill of Sale and Assignment of Assets. See **Exhibit D** (Ex 5 to the CAG deposition on October 31, 2017. (BS 000059). (CAG's response to Erickson request for production of documents).

4) An unredacted copy of "Schedule A Unsecured Debt Schedule" which specifically shows Erickson's name. **Exhibit A** (Ex - 13 to CAG deposition on October 31, 2017. (BS 000153-156).

5) A legible signature page of the Newport Beach Holding and CAG Sale of Unsecured Debt agreement specifically showing the signature of Robert A Madden. See **Exhibit A** (Ex - 13 – to CAG deposition on October 31, 2017. (BS 000152).

6) To provide the names and addresses of all Michigan residents whom CAG has sued in Michigan courts using the same breach of note and contract complaint template which CAG testified to creating in concert with Potestivo for collection lawsuits on its Newport Beach portfolio of defaulted accounts.

Requiring Potestivo to produce documents and supplement its discovery responses as follows:

7) Produce the unredacted case management notes/log used by Potestivo in documenting its actions pertaining to its state court collection litigation and which it provided 15 days after its corporate witness deposition. (See Exhibit C).

8) Produce the ten email correspondences referred to by Potestivo 30b6 witness exchanged between Chantelle Neumann and attorneys Brian Potestivo, Angela Veda, Charlotte Haack and Michael Woods regarding the handling of Erickson state court case. See Exhibit  F.

9) The unredacted state court litigation file which Potestivo maintained against Erickson. See Exhibit  F.

10) Produce copies of all complaints which Potestivo filed on behalf of CAG and which used the same template format as used in the Erickson case and specifically designed for suing on CAG's portfolio of acquired delinquent accounts from Newport Beach. See Ex - F, Potestivo TR 47:14.

## Argument

Erickson's FDCPA action, filed in January 2017, arises out of violations of federal and state laws governing attorney debt collector and debt buyer's collection activity. Plaintiff Erickson alleges these violations occurred prior to and after CAG filed its state court collection action against Erickson in October 2016. Both defendants' violations include false, deceptive and misleading representations to plaintiff and third parties in an attempt to collect a debt as well as suing on a time barred debt.

Erickson first served his discovery requests to CAG in May 2016 with a notice of deposition of CAG's corporate representative set for May 31, 2017. See Exhibit

G and H. These notices pursuant to subpoena clearly directed CAG to produce the original note for inspection. CAG disregarded the subpoena without notice or objection. Given that there were two cases, both state and federal arising out of the same nucleus of facts, the parties agreed to each submit to one deposition instead of two for use in both cases.   See Exhibit I.

On or about October 25, 2017 the parties stipulated to a protective and confidentiality order as to all discovery responses as a well as deposition testimony. Despite the entered protective order, both Defendants CAG and Potestivo have redacted numerous documents claiming confidentiality, attorney client privilege and or work product. At no time has either Defendant produced a privilege log with their objections. As such Defendants have obstructed discovery, and deposition process in this case at considerable expense to Plaintiff.

Pursuant to state law governing negotiable instruments in Michigan, Mr. Erickson has requested by subpoena to inspect to the original note with the wet signatures. *Shaya v Karam*, Mich App No. 308905, May 6, 2014 unpublished. See Exhibit K. Despite being on notice that its Holder in Due Course status was disputed and therefore a material topic and defense to CAG's state court action against Erickson, CAG appeared for its deposition without the original promissory note or any of the wet signatures. CAG testified that he had read the deposition notices and subpoenas requiring him to bring the original note.

Potestivo also testified that its normal operating procedure and due diligence prior to instituting legal action against a consumer would be to verify or confirm that "that the client is holding a negotiable instrument, has a record chain of endorsements". Ex F - Potestivo TR 108:11

However in Erickson's case, when asked if Potestivo had requested this sort of information from CAG, Potestivo testified:

Q. And has Collins provided you with an affidavit that they have an original note with all wet signatures on it? A. For this case? No, not at this time.  Q. Have you asked? …

A No, we haven't got -- I'm not handling the case but I'm sure at some point they might need that so...

Ex F – Potestivo TR 48:22-49:2

Without the original promissory note and evidence of wet signatures, CAG cannot establish a primary element of its state court claim against Erickson for breach of contract or its status as a Holder In Due Course of the note. The exceptions for lost note affidavits are inapplicable here as can be seen by CAG's deposition testimony at page 98. (See Ex E).

Q. (BY MR. ANDERSON)
Q. Okay. And you have a copy of the original wet signature note back in your office in Austin, Texas.
A. Yes.
Q. And the note also included all the wet signatures of the previous owners of this debt?
A. The -- I will answer yes. There may be some allonges that were copies as of the time that it was transferred to somebody else, but my answer would be yes. I would have to look at it again.
Q. Why didn't you bring it with you after you knew that I had subpoenaed the note for inspection?
A. Again, I thought it had already been sent up here.
Q. Where is the original note?  A In Austin, Texas.   (emphasis added).

CAG's failure to produce the original note during its deposition and continuing refusal to produce is without justification. As it turned out Defendant Potestivo also has not seen the original note on which it claimed the holder in due course status on behalf of its client CAG in numerous similar lawsuits. Nor has Poestivo asked to see the original note or even ask for an affidavit from CAG indicating CAG has the original note. See Ex F – 48:22-49:5.

Even more incredulous was that Potestivo admitted that its Newport template complaint which filed against Erickson and 85 other consumers, contained a "scriveners' error" which misstated the legal definitions of "holder" and "holder in due course." At page 49-50 of her deposition, Ms. Neumann on behalf of CAG testified:

> Q. (BY MR. ANDERSON:) Well, you've made a claim that Collins Asset is a holder in due course; correct?
> MS. SHAFFER: Objection.
> A. Holder, correct.
> Q. (BY MR. ANDERSON:) Doesn't your Complaint state holder in due course?
> A. Yes. That's incorrect though.
> Q. So your Complaint is incorrect?
> A. That term, the statute that it refers to is correct. It just says the holder.
> Q. Tell me more about how your Complaint is incorrect.
> A. Just that due course language should not be in that paragraph.
> Q. Would you say that that's a misrepresentation in the
> communication to collect a debt?
> A. No, I would not.
> Q. Is it a misrepresentation to a state court?
> A. No, I would not.
> Q. Is it a misrepresentation to a state court judge?
> ….
> At page 50,
> Q. Is it accurate?
> A. No. It's a scrivener's error just like unfortunately are in

pleadings.
Q. Who is responsible for that scrivener's error?
A. I am.
Q. How many other complaints are filed out there in state court
that contain that scrivener's error? A. I don't know.
Q. Who would know?
A. I would know after reviewing every single file.
Q. Okay. I'd like to ask you to do that. How soon can you have
that done?
MS. SHAFFER: I'm going to object to that. I don't see where that would be relevant and
overly burdensome.

Potestivo is playing games and turning the discovery process on its head.

Potestivo' corporate witness testified that she had not read the deposition notices and

subpoenas to CAG subpoenaing the original wet signature note in the state case. Ms.

Neumann claimed since she was designated to be Potestivo's corporate witness that

she was removed as counsel for CAG in the state case. As a result, Ms. Neumann

claimed that she did not need to familiarize herself with her representation of CAG

in the state court matter and she could not be questioned on these matters. See Ex F.

Ms. Neumann claimed never read the Sale and Purchase agreement from Newport

to CAG and was therefore unable to answer any questions concerning that agreement

on behalf of Potestivo. As Neumann was CAG's attorney who participated in

drafting the template complaint for CAG's Newport Beach accounts, (See Ex F 47:2)

she was under a duty to review all relevant documents pertaining to or in support of

the CAG lawsuits.  She had a duty to confirm that her client was in possession of the

original note and / or at minimum get an affidavit to support it.  Moreover, Ms.

Neumann was not substituted out of the state court case until July 18, 2017 and said

order and stipulation of substitution of counsel was never served on Defense counsel in the state case (Rex Anderson). Plaintiff's counsel had already re-noticed CAG's deposition 4 times by July 18, 2017 during which time, Ms. Neuman was still plaintiff's counsel of record for CAG. It is for this reason that Plaintiff request the court to order the continuance of Potestivo's deposition and order Potestivo to answer examination questions regarding their handling of the collection lawsuit.

Both Defendants' attorneys have also claimed privilege to many questions and many documents about how Potestivo handled CAG's litigation and documents pertaining thereto. Erickson sued Potestivo for violations of the FDCPA relating to its acts and omissions in handling the debt collection lawsuit on behalf of CAG and it only seems fair that Plaintiff can ask questions on these matters after reviewing the Potestivo CaseAware activity report without redactions.

Accordingly, the documents requested by Plaintiff's are relevant to the Plaintiff's allegations and/or reasonably calculated to lead to the discovery of admissible evidence. Defendants' conduct has necessitated this motion to compel and additional time and expense re-noticing these depositions. Therefore, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion to Compel Discovery and order Defendant to produce, without objection, all the documents requests within five business days of the entry of the Order. Also, that the court order the continuance of Defendants' depositions after Plaintiff has had time to review

Defendants' unreacted documents. Finally, pursuant to Fed. R. Civ. Pro. 37(a)(4)(A), Plaintiff requests that this Honorable Court grant it costs, expenses and attorney fees incurred in bringing this Motion.

<u>**CITING AUTHORITY FOR MOTION TO COMPEL**</u>

In this case, Erickson has only asked for relevant evidence. However, it appears that Defendants do not want to reveal this relevant evidence as it may be damaging to their defense.

Courts have routinely granted motions to compel and even sanctions where a party responding to discovery utilizes frivolous, boiler-plate objections. Such obstructionist tactics are not to be condoned. The only way to combat this practice is to penalize those who thwart court orders and interpose improper, frivolous, deplorable objections to discovery. *St. Paul Reinsurance Co., et. al. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. IA 2000). Generalized objections are likewise not sufficient to properly respond to discovery. *Cipollone v. Liggett Group*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Burns v. Imagine Films Entertainment*, 164 F.R.D. 589, 592-593 (W.D. NY 1996); *Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52, 58 (D.C. 1984). "[B]oilerplate objections are unacceptable." *Kooima v. Zacklift Intern. Inc.*, 209 F.R.D. 444, 446 (D.S.D. 2002). "The party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad,

burdensome or oppressive." *Id.* (citing *St. Paul Reinsurance Co., Ltd. V. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. IA 2000)); *see also* Fed R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.") Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest.").

Defendants and their counsel had a "responsibility . . . to take affirmative steps to monitor compliance so that all sources of discoverable information [we]re identified and searched." *In Re Seroquel Prod. Liability Litig.*, 244 F.R.D. 650, 663 (M.D. Fla. 2007). Instead, there was an almost complete failure by Defendants and their counsel to search for and produce responsive items.

Under FRCP 26(b)(1), "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This relevance must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

## A. PLAINTIFF'S DISCOVERY AND DEPOSITION TOPICS ARE NOT IMPROPER AND DO NOT CREATE AN UNDUE BURDEN UPON DEFENDANT.

## 1. ANY DISCOVERY RELATED TO DEFENDANT'S COLLECTION ACTIVITIES IS RELEVANT AND DISCOVERABLE

Defendant is required to discuss its collection methods and techniques under FRCP 26(b)(1): "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . [R]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

This relevance must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Oppenheimer Fund*, 437 U.S. at 351 (1978).

### B.     Defendants Failed to Provide a Privilege Log

Defendants claim that the requested material is subject to the work product doctrine or attorney client privilege. Fed. R. Civ. P. 26(b)(5)(A) provides that a party withholding information that is otherwise discoverable "by claiming that the information is privileged or subject to protection as trial preparation material" must:

(i) [E]xpressly make the claim; and

(ii) [D]escribe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Defendants have provided no privilege log in violation of Rule 26(b)(5). Defendants'

were required to provide a privilege log that must separately identify each document withheld from production and identify it with sufficient particularity to permit counsel to assess the claim of privilege. The Court can reject a privilege claim where the party invoking the privilege "does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege." *Bowne, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 474 (S.D.N.Y. 1993). For these reasons alone, Defendants privilege claim must fail.

Questions of privilege are to be determined by federal common law in federal question cases. Fed. R. Evid. 501. "The attorney-client privilege protects from disclosure 'confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.'" *In re Grand Jury Subpoena (United States v. Doe),* 886 F.2d 135, 137 (6th Cir. 1989) (quoting *In re Grand Jury Investigation,* 723 F.2d 447, 451 (6th Cir. 1983)); *See also In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006) (*quoting United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) ("The [attorney-client privilege] doctrine protects only those disclosures that are necessary to obtain informed legal advice and that would not be made without the privilege. The privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose." (citations omitted)). Moreover, [A lawyer asserting a privilege] must normally raise the

privilege as to each record sought and each question asked so that ... the court can rule with specificity. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir. 1974). Here, Defendants provided only a blanket objection and have not described which documents, if any, would be subject to the privilege. Accordingly, Plaintiff is entitled to the requested information.

## WITNESS LIST AFTER DEADLINE

Plaintiffs lateness in disclosing his expert is justified as described above. The rule governing the disclosure of expert witnesses during discovery is FRCP 26(a)(2)(c), which states:

> Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial. Fed. R. Civ. P. 26(a)(2)(c) (emphasis added).

The party that fails to disclose pursuant to Rule 26(a) or (e) has the burden of proving that testimony of the undisclosed witness is "harmless" or "substantially justified." *Roberts ex rel. v. Johnson*, 325 F.3d 776, 782 (6th Cir. 2003).

Here, defendants produced a few days before CAG's deposition, Exhibit A with a page containing the purported signature of Robert Madden. Ex A - BS 000152. This signature is barely legible. CAG testified that it would recognize the signature of Robert Madden. Ex E – 112:20 -113:1. Based on comparing Robert Madden's signature on three documents produced in discovery it appears the

signatures are different and that a handwriting expert is now necessary. Plaintiff's

expert report was provided to Defendants in response to their discovery requests.

See Exhibit  L – Expert report.

## **LEAVE TO AMEND COMPLAINT**

Fed. R. Civ. P. 15(a)(2) provides that leave to amend should "be freely given

when justice so requires."  Trial court have been instructed that "this mandate is to

be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Recognizing that the entire spirit of the rules is to the effect that controversies

shall be decided on the merits, the courts have not been hesitant to allow amendments

for the purpose of presenting the real issues of the case, where the moving party has

not been guilty of bad faith, and is not acting for the purpose of delay, the opposing

party will not be unduly prejudiced, and the trial of the issues will not be unduly

delayed. *Id*.  Application of the above authority to the grounds set forth in Plaintiff's

accompanying motion warrants entry of the court's order granting Plaintiff leave to

file a first amended complaint in the above action.

Additionally, in *Foman*, the court advised that only a limited set of improper

reasons for het amendment should be the basis of a denial of leave to amend:

> . . . if the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an opportunity
> to test his claim of the merits.  In the absence of any apparent or
> declared reason – such as undue delay, bad faith or dilatory motive on
> the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party

by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

*Foman*, 371 U.S. 178 at 182.

Thus, leave to file an amended complaint should be freely given, and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In determining whether to grant a motion to amend under Rule 15(a), the Sixth Circuit has held that a number of factors should be considered, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001).

Plaintiff has not caused the delay in discovery which forms the basis for needing to file an amended complaint and retaining an expert witness at the close of discovery. Defendant cannot claim prejudice when it delayed the discovery which now necessitates these measures.

## MOTION TO EXTEND SCHEDULING ORDER

For the foregoing reasons, especially with regard to Defendants inadequate or non responsive responses to Plaintiff's discovery requests, Plaintiff requests to

extend the Discovery Cutoff deadline along with all dates that derive there from pursuant to the Court's Scheduling Order, as it sees fit in order to continue Defendants' depositions. Given the Christmas holidays soon approaching and depending on when this motion is heard, Plaintiff would request an additional 60 days.

## CONCLUSION

Despite the fact that Plaintiff has attempted to informally resolve these discovery issues with Defendants and Defendants' counsel, no resolution has occurred.  For those reasons and others specified herein, the Court should issue an order: 1) compelling complete and unredacted responses to Plaintiff's discovery requests; 2) overruling all of Defendants objections based on attorney client privilege; 3) allowing Plaintiff to amend his Complaint; 4) allowing Plaintiff to amend his expert witness list; 5) extending the Scheduling Order; and 6) awarding Plaintiff his costs and fees for having to bring this motion.


Dated:  November 28, 2017                    Respectfully Submitted,

                                             */s/ Rex C. Anderson*
                                             Rex C. Anderson.
                                             Counsel for Plaintiff
                                             9459 Lapeer Road, Suite 101
                                             Davison, MI  48423
                                             (810) 653-3300
                                             rex@rexandersonpc.net
                                             (P47068)

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CHRISTOPHER ERICKSON,** | **Case No.** 5:17-cv-10045-JCO-APP |
| **Plaintiff,** | |
| **v.** | **Hon. John Corbett O'Meara** |
| **COLLINS ASSET GROUP, LLC and POTESTIVO & ASSOCIATES, PC,** | |
| **Defendants.** | |

## PROOF OF SERVICE

I hereby certify that on November 28, 2017 I electronically filed the **PLAINTIFF's MOTION TO COMPEL DISCOVERY, AMEND COMPLAINT AND FILE EXPERT WITNESS LIST** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Elizabeth M. Shaffer
Dinsmore & Shohl LLP
225 E. Fifth St., Ste. 1900
Cincinnati, OH 45202
(513) 977-8128
elizabeth.shaffer@dinsmore.com

November 28, 2017

/s/ Rex Anderson_____
Rex Anderson PC
9459 Lapeer Rd Ste. 101
Davison, MI 48423
(810) 653 3300
mied@rexandersonpc.com